UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RES EXHIBIT SERVICES, LLC, | Case No. 2:21-cv-01953-APG-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| LNW GAMING, INC. f/k/a SG GAMING, INC. f/k/a BALLY GAMING, INC., | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Leave to File Counterclaim and Third-Party Complaint, Add New Parties, and Modify the Discovery Deadlines (the "Motion" or "Motion to Amend"). ECF No. 32.[1] After the Court considered Defendant's Motion, Plaintiff's Response (ECF No. 39),[2] and Defendant's Reply (ECF No. 47), the Court ordered supplemental briefing requiring the parties to clarify and comment on whether the "third-party" defendants should be considered as proposed counterclaim-defendants under Fed. R. Civ. P. 13(h); whether the filing parties disagreed with the Court's planned analytical approach to the pending Motion to Amend; and either an explanation of the basis for the disagreement with the Court's planned approach or a discussion of how the application of Rules 13(h), 14, 19, and/or 20 support the parties' respective positions. ECF No. 57. On August 31, 2023, the Court received supplements from Plaintiff and Defendant, which the Court reviewed. ECF Nos. 58 and 59.

**I.   Relevant Background**

This case commenced on October 25, 2021 when Plaintiff filed suit against Defendant asserting five causes of action arising out of the alleged breach of contract the parties executed in May 2018. ECF No. 1. On December 13, 2021, Defendant filed its Answer, which included the following seventh and eighth affirmative defenses:

---

[1] Defendant's Motion to Amend and all its attached exhibits are filed on the public docket with redactions at ECF No. 32. The unredacted version of the Motion to Amend as well as several exhibits are filed under seal at ECF No. 34.
[2] Plaintiff's Response and all its attached exhibits are filed on the public docket with redactions at ECF No. 39. The unredacted version of the Response as well as several Exhibits are filed under seal at ECF No. 40.

1

> The Complaint is barred in whole or part because RES breached the implied covenant of good faith and fair dealing in the EPSA[3] by, inter alia, knowingly failing to obtain the required approval from SG Gaming to exclude certain payments from the EPSA Minimum Spend/Termination Fee, cultivating improper relationships with SG Gaming employees through the use of illicit benefits and/or bribes designed to increase RES's revenue from SG Gaming without the knowledge of key decisionmakers, and using material conflicts of interest in the relationship with SG Gaming to its benefit.
>
> ***
>
> The Complaint is barred in whole or part by the doctrine of unclean hands because RES, inter alia, knowingly failed to obtain the required approval from SG Gaming to exclude certain payments from the EPSA Minimum Spend/Termination Fee, cultivated improper relationships with SG Gaming employees through the use of illicit benefits and/or bribes designed to increase RES's revenue from SG Gaming without the knowledge of key decisionmakers, and used material conflicts of interest in the relationship with SG Gaming to its benefit.

ECF No. 1 at 10.

On January 18, 2022, the Court entered a Scheduling Order setting deadlines including an April 1, 2022 deadline to amend pleadings. ECF No. 18 at 5. Discovery deadlines were subsequently extended three times. ECF Nos. 25, 27, 30. The deadline for parties to amend pleadings was extended only once to July 13, 2022, and the parties explicitly stated in their second and third proposed extensions that they did not wish to extend the deadline any farther. ECF Nos. 25 at 3, 27 at 3, 30 at 3. On January 18, 2022, the Court entered an Order governing the protocols in discovery for Electronically Stored Information (the "ESI Protocol"). ECF No. 20.

**II.    Summary of the Pleadings**

    A.    <u>Defendant's Motion to Amend</u>.

Defendant asserts that in late July 2019 it discovered that Jeri Wiedemer ("Wiedemer"), an executive working for Defendant, received "certain benefits" from Plaintiff during the term of the Contract at issue in this litigation. ECF No. 32 at 2. Defendant contends Wiedemer failed to disclose critical facts to Defendant while employed, which evidenced a corrupt relationship among Plaintiff, Plaintiff's CEO James Leonardo ("Leonardo"), and Wiedemer. *Id.* at 2-3. Defendant says that as a result of its investigation into Wiedemer's conduct Wiedemer's relationship with Defendant ended in April 2020. *Id.* at 3.

---

[3] EPSA stands for the Exhibit Production and Services Contract referred to herein as the "Contract."

Based on the above, Defendant served Plaintiff with discovery requests seeking documents and information relating to the nature and extent of the alleged relationship between Wiedemer and Plaintiff. *Id.* Defendant also sought information relating to Plaintiff's original solicitation of Defendant as a client and the execution of the underlying Contract. *Id.* In response to its requests, Defendant claims that in April 2022 Plaintiff produced documents concerning limited benefits provided to Wiedemer at Plaintiff's expense as well as other issues Defendant had already discovered during its July 2019 investigation of Wiedemer. *Id.* Defendant says Plaintiff failed to produce any information concerning benefits Plaintiff provided to Wiedemer nor anything indicating it had an improper relationship with her prior to the execution of the Contract. *Id.* Defendant says this pattern of denial was repeated by Plaintiff when answering Defendant's interrogatories. *Id.*

Defendant state that on May 5, 2023, thirteen months after Plaintiff served what Plaintiff contended was all documents concerning its relationship with Wiedemer, and ten months after deposing Leonardo and Plaintiff's other key executives, Plaintiff turned over more than 57,000 new documents relating to its relationship with Wiedemer. *Id.* at 3-4. This production followed protracted efforts by Defendant to obtain Plaintiff's internal communications regarding the issues in dispute. *Id*. at 4. Among the things produced Plaintiff disclosed documents showing Leonardo and Robert Reyes ("Reyes"), Plaintiff's Vice President of Sales, "fraudulently procured" the Contract and otherwise "shed light on the full extent of Wiedemer's" unethical relationship with Plaintiff "during the term of the" Contract. *Id.* at 4.

Defendant claims its July 2019 internal investigation into Wiedemer's conduct "barely scratched the surface" of the alleged corruption. *Id.* Defendant further says that as its relationship with Plaintiff deteriorated and the instant litigation commenced, Plaintiff, Leonardo, and Wiedemer each took actions to cover up the alleged corrupt nature of their relationships. *Id.* Defendant accuses Plaintiff of intentionally producing curated documents revealing only what Defendant already knew as a result of its 2019 investigation. *Id.* Defendant also says Leonardo committed perjury in response to interrogatories and during his deposition, and Wiedemer intentionally deleted emails from her work account relevant to her corrupt relationship with Plaintiff. *Id.* at 4-5. Defendant further

contends that Wiedemer and her husband failed to disclose relevant communications from their personal email accounts. *Id.* at 5.

Because of this newly discovered material, Defendant seeks leave of Court to assert what it now clarifies as permissive counterclaims under Federal Rules of Civil Procedure 13(h) and 20 against Plaintiff, Leonardo, Reyes, and Wiedemer. ECF No. 59 at 7-8. Defendant seeks to extend the discovery schedule and reopen all closed deadlines so that the parties can conduct discovery into the new causes of action. *Id.*

In support of its Motion Defendant provides a timeline of events leading to its instant Motion to Amend:

- January 20, 2022: Defendant propounded its First Set of Interrogatories ("Interrogatories") and Document Requests (sometimes "RFP" or "RFPs"). ECF Nos. 32-3; 32-4. Included in the Interrogatories was a request to identify any compensations, gifts, services, or benefits that Plaintiff conferred or attempted to confer on Wiedemer. ECF No. 32-4 at 7. Included in the RFPs were requests for all documents relating to the negotiation, formation, and execution of the contract, along with documents relating to communications between Plaintiff, Wiedemer, and her husband. ECF No. 32-3 at 6, 9, 10; *see also id.* at 9 seeking all communications regarding "any compensation, benefits or gifts" provided by Plaintiff to Wiedemer.

- April 8, 2022: Plaintiff responded to Defendants' discovery requests with 4,245 documents claiming it was "producing the documents identified as responsive … [to RFP], and will produce additional, non-privileged documents in its possession, custody, or control, if any, that are located as discovery proceeds." ECF No. 32-5. Defendant asserts materials related to the allegations contained in Defendant's new causes of action were not disclosed with Plaintiff's April 2022 responses. ECF No. 32 at 6-7.

    o On this same date:

        ▪ Plaintiff responded to Defendant's Interrogatories signed by its CEO, Leonardo, stating Plaintiff only provided occasional meals to Wiedemer during the time that the contract was in force. ECF No. 32-8 at 9.

        ▪ Defendant responded to the documents requests propounded by Plaintiff with documents found in Wiedemer's business files accumulated while she was employed by Defendant. ECF No. 32 at 7. However, despite Wiedemer's business account being imaged and searched emails responsive to Plaintiff's document requests were not produced because Defendant later discovered Wiedemer deleted such documents from her account. *Id.* at 7-8, 14;

- July 19-21, 2022: Believing it had received all materials responsive to its document requests, Defendant conducted the depositions of Leonardo, Plaintiff's CFO Jeffrey Jacobson ("Jacobson"), and Plaintiff's Vice President of Client Services Rachelle Guion ("Guion") over this three day period. During these depositions Defendant realized Plaintiff had not produced all of its non-privileged, internal correspondence responsive to Defendant's RFPs. Defense counsel raised the issue with Plaintiff's counsel who agreed to "look into [the

4

issue]." ECF No. 32-10 ¶ 4. Defendant further avers that Leonardo gave "misleading and false testimony" regarding his and Plaintiff's relationship with Wiedemer. ECF No. 32 at 4, 18.

- September 2022: After conferring with Plaintiff's counsel regarding the lack of internal correspondence, Plaintiff turned over two hard drives containing 800 gigabytes of unprocessed, raw data on September 2, 2022. ECF No. 32-12 at 2-3. Because the format of the production did not comply with agreed upon ESI protocol, Defendant demanded a compliant production. This led to a meet and confer on September 14, 2022 at which Plaintiff agreed to review the problem with its e-discovery technician. ECF No. 32-1 ¶ 6.

- October-November 2022: On October 4, 2022, Defense counsel emailed Plaintiff's counsel asking about the status of Plaintiff's inquiry into the September ESI production. Plaintiff responded the following day asserting it met the ESI protocol requirements. ECF No. 32-14 at 6-7. Defense counsel replied on October 6, 2022 that the ESI protocol allowed native electronic format only in limited circumstances not present in the current situation and that a meet and confer was required based on the parties' disagreement. *Id*. at 5. Hearing nothing, Defense counsel emailed Plaintiff's counsel again on November 4, 2022, this time resulting in a teleconference that included Plaintiff's e-discovery manager who agreed to "investigate" the technical issues arising from Plaintiff's production. *Id*. at 4.

- January 2023: After hearing nothing from Plaintiff, Defendant sent a discovery dispute letter to Plaintiff on January 25, 2023, which was discussed by the parties following a deposition on January 26, 2023. ECF No. 32 at 11. During that discussion Plaintiff confirmed the hard drives contained CAD and correspondence files. *Id*. Defense counsel found the "lumping" of irrelevant CAD files in with critical internal correspondence "on unprocessed hard drives rather than in" compliance with ESI protocol a questionable tactic. *Id*. at 11-12.

- In February 2023, the parties agreed on a list of custodians and search terms applicable to Defendant's data on the hard drives, with final agreements occurring on February 27, 2023. *Id*. at 12; ECF No. 32-16 at 2.

- April-May 2023: As of April 24, 2023, and despite months of communication concerning the ESI at issue, Plaintiff still had not produced the internal correspondence in readable format. ECF No. 32 at 12. On this date, because several key depositions were noticed for mid-May, including those of Wiedemer, her husband, Reyes, Reyes' wife (an employee of Defendant at the time the contract was executed), and Wiedemer's direct supervisor Greg Colella ("Colella"), defense counsel reached out to Plaintiff's counsel asking about the status of the ESI production. *Id*. Plaintiff first offered to produce the additional documents on May 12, only four days before the first deposition was set to occur, but ultimately agreed and produced 57,000 documents (which RES admits contained 183,000 pages) on May 5, 2023. *Id*. at 13; ECF No. 39 at 12.

- May 12, 2023: After a preliminary review of 57,000 documents produced by Plaintiff, Defendant emailed Plaintiff explaining that because the documents contained correspondence between Plaintiff and Wiedemer not previously known to Defendant, Defendant was vacating the depositions set for mid-May and instead going to file the instant Motion to Amend. ECF No. 32 at 13. Defendant's counsel sent a separate email seeking to meet and confer to discuss Defendant's intention to seek sanctions against Plaintiff. *Id*. Defendant also asked its discovery consultant whether Plaintiff's newly disclosed Wiedemer emails were in its—Defendant's—database. *Id*. The consultant confirmed they were not, thus confirming Wiedemer had deleted work emails. *Id*. at 14. The production further confirmed Wiedemer had either deleted or failed to produce emails from her personal Gmail account in response to a subpoena duces tecum served by Defendant on Wiedemer. *Id*.

5

- May 15, 2023: Defendant received 12,000 additional documents from Plaintiff that were returned because Plaintiff failed to conduct an adequate privilege review. *Id.* As of the filing of its Motion, Defendant had not again received these documents from Plaintiff. *Id.*[4]

Based on what Defendant contends is malfeasance by Plaintiff and the belated production of documents by Plaintiff—a production that occurred long after Defendant served its RFPs and the deadline to amend pleadings had passed—Defendant argues there is good cause to permit amendment to its Complaint under Federal Rule of Civil Procedure 16(b). *Id.* at 17-19. For the same reasons, Defendant contends the factors enumerated by the Ninth Circuit—undue delay, bad faith, undue prejudice, and futility—weigh in favor of the Court permitting leave to amend under Rule 15. *Id.* at 19-21. Finally, Defendant requests that if leave to amend is granted, the Court modify the operative Scheduling Order and reset all deadlines for 180 days from the date of the Court's decision to allow the parties to conduct discovery on the new claims. *Id.* at 22.

B. **Plaintiff's Response**.

Plaintiff argues Defendant cannot establish good cause for its late amendment under Rule 16(b) because the proposed claims recycle arguments made in Defendant's affirmative defenses filed in response to RES' Complaint. ECF No. 39 at 2. Plaintiff questions why, despite being in possession of over 800 gigabytes worth of ESI since September 2022, Defendant never once sought to extend or reopen the deadline to amend pleadings. *Id.* at 3. Plaintiff notes Defendant knew about the alleged improper relationship between Plaintiff and Wiedemer since the summer of 2019 and yet only now chose to bring claims arising from that relationship. *Id.* Plaintiff further contends the proposed amendment fails under Rule 15(a)(2) because the claims are futile. *Id.* Plaintiff argues that there are no factual allegations demonstrating any harm to Plaintiff. *Id.*

In addition to Defendant's Seventh and Eighth Affirmative Defenses in which Defendant acknowledges being aware of the relationship between Plaintiff and Wiedemer, Plaintiff points to the April 11, 2022 responses to Defendant's First Set of Interrogatories in which Plaintiff describes critical details of the relationship between Wiedemer, Leonardo, and Plaintiff. *Id.* at 10 *citing* ECF No. 39-2 at 8-10. Further, Plaintiff points to Defendant's April 11, 2022 privilege log in which the

---

[4] Also on May 15, 2023, the parties held a meet and confer in which Plaintiff's counsel stated that Plaintiff and its in-house counsel, not outside counsel, were responsible for the supplemental production of ESI. *Id.*

6

final 72 documents were withheld based on work product and an "internal investigation regarding RES relationship." *Id.* at 10-11 *citing* ECF No. 39-5 at 15-17. According to Plaintiff, these entries, dating from mid-2019, demonstrate Defendant was aware of the purportedly improper relationship between Plaintiff and Wiedemer long before bringing the instant Motion to Amend. *Id.* at 11.

After Defendant requested additional documents from Plaintiff relating to Plaintiff's relationship with Wiedemer, Plaintiff says it produced the ESI in native format in two hard drives as permitted by Section 4 of the parties' ESI Protocol. *Id.* Thereafter, the parties discussed the format of the production and eventually filed a Stipulation in February 2023 in which the parties stated: "the parties are currently conferring about the most efficient and cost-effective manner to process and review this significant amount of ESI data…." *Id.* at 12 *citing* ECF No. 30 at 3. Plaintiff notes that the Stipulation also included a provision in which the parties agreed that the parties "do not seek an extension of this deadline" to amend pleadings. *Id. citing id.*

Plaintiff argues Defendant seeks to use the work product protection "as both a sword and a shield" because Defendant refused to turn over any of the information gained from its 2019 internal investigation into the relationship between Wiedemer and Plaintiff. *Id.* at 13. Without this disclosure, Plaintiff contends it has no way of knowing whether Defendant gained access to these documents or even tried to collect such information prior to bringing the instant Motion. *Id.* at 14. Plaintiff argues that even if the Court accepts Defendant's contention that it did not have access to the information about Wiedemer within its own documents, Defendant was not diligent about obtaining and reviewing these documents when they were turned over in September 2022. *Id.* at 15. Plaintiff accuses Defendant of taking no action to preserve its rights to amend its Complaint. *Id.*

Plaintiff concludes that if the Court finds good cause to permit Defendant's untimely request to amend, the newly asserted claims are futile. *Id.* at 17. Plaintiff argues Defendant's claim that it suffered damages is conclusory as Defendant fails to explain exactly how those damages were incurred. *Id.* at 18. Similarly, Plaintiff says the conclusory allegation regarding a civil conspiracy among Leonardo, Reyes, and Wiedemer is unsupported by any factual allegation that they acted pursuant to an implicit or explicit agreement. *Id.* at 19. Finally, Plaintiff argues all Defendant's claims rely on the faulty premise that Defendant was somehow tricked into entering into the Contract

7

with Plaintiff. *Id.* at 19-20. However, Plaintiff says that because Defendant ratified the agreement through its conduct and participation, Defendant cannot now assert that it was fraudulently induced into joining the Contract. *Id.* at 21.

      C.      <u>Defendant's Reply</u>.

Defendant does not take kindly to Plaintiff's suggestion that Defendant has been in possession of documents withheld by Plaintiff since the "data dump" on September 2, 2022 in a format that violated the terms of the parties' ESI protocol. ECF No. 47 at 2. Defendant points out Plaintiff failed to produce critical internal correspondence in its initial production and it was not until May 2023 that the responsive documents were produced. *Id*. Defendant also states that until May 2023, when Plaintiff finally produced relevant documents, it had no reason to believe Plaintiff and Wiedemer had not produced all responsive documents to its April 2022 document request. *Id*. at 2-3. Defendant rejects Plaintiff's arguments that it ratified the contract when, "as here, the party alleged to have ratified did not have full knowledge of all material facts." *Id*. at 3; *see also id*. at 9-10. Defendant says its civil conspiracy claims is sufficiently pleaded as a matter of fact and law. *Id*. Defendant notes Plaintiff does not identify or discuss any prejudice that may arise from the amendment it seeks. *Id*. n.2. Defendant also states Plaintiff's attempt to cast the assertion of privilege and work product over its internal investigation is improper—a specious assertion because Defendant produced documents describing "the scope and subject matter of the internal investigation in detail …." *Id*. at 5. Defendant submits the belatedly produced documents demonstrate Plaintiff's CEO (Leonardo) coordinated with Wiedemer during Defendant's investigation assisting her with responses to specific issues. *Id*.

Defendant counters Plaintiff's contention that Defendant's affirmative defenses show Defendant knew all facts needed to assert its counterclaims by pointing to Plaintiff's failure to dispute that Defendant learned significant new information from Plaintiff's late document production, not the least of which was the alleged fraudulent procurement of the contract. *Id*. at 6. The fraudulent procurement of the Contract is at the heart of Defendant's counterclaims. *Id*. Defendant says Plaintiff provided misleading responses to Interrogatories, provided inaccurate

8

deposition testimony, and withheld documents all compounded by Wiedemer's deletion of emails from company and personal accounts. *Id.*

Regarding Plaintiff's September 2022 production in native format, Defendant quotes Section 4 of the ESI protocol, which Defendant raised soon after the production occurred. *Id.* at 7. Defendant refutes Plaintiff's argument that it knew the September 2022 production of 57,000 documents in native format contained internal email correspondence with (1) a declaration showing that it was late January 2023 when it learned this fact, and (2) its January 27, 2023 email stating:

> the hard drives contained items like CAD files and operational e-mails concerning booth construction, etc., which resulted in the hard drives containing 800 GB of unprocessed data. Following our conversation yesterday, I now understand that this production also includes internal correspondence from RES that would be responsive to our document requests and calendar entries in addition to the above-mentioned items related to the trade shows themselves.

ECF No. 32-13 at 2.

### III. Discussion

#### A. Defendant Satisfies the Rule 16(b) Good Cause Standard.

When, as here, a party moves to amend a pleading after the case scheduling order's deadline for doing so has passed, the Court must first determine whether there is "good cause" to amend the case scheduling order under Federal Rule of Civil Procedure 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4). Rule 16(b)'s good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. That is, "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16 Advisory Comm. Notes (1983 amendment)). If the party seeking the extension "was not diligent," then good cause does not exist and the inquiry regarding amendment should end. *Id.* However, if the Court determines that good cause exists, it must next assess whether the proposed amendment is proper under Rule 15(a). *Id.* at 608.

The Court finds it is axiomatic that Defendant could not know the contents of internal emails in Plaintiff's possession before they were produced. Defendant also could not know the contents of Wiedemer's deleted company and personal emails before Plaintiff produced them. There is no

9

evidence before the Court supporting Plaintiff's contention that the emails Plaintiff finally produced in May 2023, responsive to Defendant's RFPs propounded in January 2022 (ECF No. 32-3), are duplicative of what Plaintiff produced in April 2023. There is no dispute that Plaintiff's and Wiedemer's emails were not ultimately produced in a format compatible with the parties' ESI protocol until May 5, 2023.[5] Plaintiff also does not dispute that all of these documents were relevant and responsive to documents sought by Defendant's January RFPs. *See* ECF No. 39, generally. And, Plaintiff offers no explanation for why the responsive documents were not produced when it first responded to Defendant's RFPs. In sum, it is undisputed that Defendant did not have access to the information contained in the documents produced in May 2023 for more than a year after these documents were requested.

The timeline of events detailed above demonstrates Defendant pursued production of documents in a searchable and readable format immediately after the September 2022 production and diligently thereafter. While it is true that the deadline to amend pleading lapsed in July 2022, and Defendant did not seek to extend that deadline, it is also true that Defendant did not have production of relevant and requested documents to support the amendment it now seeks until more than a year after that deadline passed. Unlike *Flonnes v. Prop. & Cas. Ins. Co. of Hartford*, Case No. 2:12-cv-01065-APG-CWH, 2013 WL 3109381, at *5 (D. Nev. June 17, 2013), *cited* by Plaintiff, Defendant more than adequately explained why the facts supporting its new claims were not previously available despite Defendant's diligence. *Compare Rain Gutter Pros, LLC v. MGP Mfg., LLC*, Case No. C14-0458-RSM, 2015 WL 6030678, at *2 (W.D. Wash. Oct. 15, 2015).

The Court finds Defendant was diligent in seeking documents, originally requested and responsive to its First Set of Requests for Production of Documents that were not produced in proper format until May 2023. This production was followed by a timely filed Motion to Amend.

B. <u>Defendant Meets the Standard Under Rule 15</u>.

Under Fed. R. Civ. P. 15(a)(2) courts have broad discretion when deciding whether to allow parties to amend their pleadings. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)

---

[5] The production of internal correspondence, part of 57,000 documents first disclosed by Plaintiff in September 2022, was produced in native format together with CAD documents for unexplained reasons. This native production was distinct from Plaintiff's April 2022 production.

(internal quotation marks omitted). Further, in the Ninth Circuit, Rule 15(a)(2) is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam). Courts draw all reasonable inferences in favor of granting motions to amend. *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (internal citation omitted).

Factors considered by the courts when determining whether to grant leave to amend include whether the: (1) moving party acted in bad faith; (2) moving party unduly delayed the request; (3) opposing party will suffer prejudice; (4) amendment is futile; and (5) plaintiff has previously amended its complaint. *Eminence Capital, LLC*, 316 F.3d at 1052. Courts exercising discretion to grant or deny a motion to amend "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (internal citation omitted). In this matter, Plaintiff only argues Defendant's proposed amended counterclaims are futile. ECF No. 39 at 16. Therefore, the Court focuses on the fourth prong set forth by the Ninth Circuit.

Futility is decided under Federal Rule of Civil Procedure 12(b)(6) applicable to motions to dismiss. *Hines v. Washington Federal Bank*, Case No. 2:21-cv-01621-APG-DJA, 2022 WL 60878, at *1 (D. Nev. Jan 6, 2022) ("To determine futility, the Court applies the same standard used on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"), *citing Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1998). "[I]f no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," a proposed amendment is futile. *Miller*, 845 F.2d at 214. Although futility alone can justify denying a motion for leave to amend (*Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004)), "denial on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Cates v. Stroud*, Case No. 2:17-cv-01080-GMN-PAL, 2017 WL 11429893, at *2 (D. Nev. Oct. 26, 2017) (internal citations omitted).

The Court finds Defendant's counterclaims are not futile; that is, at this stage of proceedings, the Court cannot conclude there is no set of facts Defendant can allege that would support valid and sufficient counterclaims. With respect to Plaintiff's argument that Defendant ratified the EPSA

11

through its conduct, this contention is belied by the facts establishing that Defendant did not have documents showing what was fully occurring behind the negotiation-scene (and thereafter) at the time contract negotiations ensued or, for that matter, until May 2023.  "Ratification occurs when a corporation, *fully knowing the material facts*, "(1) receives, accepts, and retains benefits from the contract, (2) remains silent, acquiesces, and fails to repudiate or disaffirm the contract, or (3) otherwise exhibits conduct demonstrating an adoption and recognition of the contract as binding." *Physicians Indemnity Risk Retention Group, Inc. v. Risk Management Center, Inc.*, Case No. 2:09-cv-01544-RLH-PAL, 2009 WL 10694207, at *6 (D. Nev. Nov. 25, 2009) (emphasis in original) (internal citations and quote marks omitted); *Changzhou AMEC Eastern Tools & Equip. CP., Ltd. v. Eastern Tools & Equip., Inc.*, Case No. EDCV 11-00354 VAP (DTBx), 2012 WL 3106620, at *17 (C.D. Cal. July 30, 2012) ("[t]he test for ratification is whether the releasor *with full knowledge of material facts entitling him to rescind* has engaged in some unequivocal conduct giving rise to an inference that he intended his conduct to amount to a ratification") (internal citation and quote marks omitted).

With respect to Defendant's damages, each cause of action pleaded provides a sufficient basis for the damages claims.  For example, Defendant alleges but for Plaintiff's asserted material misrepresentations it would not have selected Plaintiff as a vendor and, thus, Plaintiff should be disgorged "of all funds and profits paid to … [Plaintiff] less the amount that RES can prove it should retain as the reasonable value of services provided …." ECF No. 34-1 ¶ 69.  *See also id*. at ¶¶ 77-78, 102-105, 110-111.  Without expressing an opinion regarding the viability of Defendant's civil conspiracy counterclaim, the Court finds, with the incorporation of all prior paragraphs, the claim adequately pleaded.  *Id*. ¶ 101; *see also id*. ¶¶ 5, 22-43, 47-61.

   C. <u>Defendant Seeks to Join New Defendants in its Counterclaim under Federal Rule of Civil Procedure 13(h) and 20.</u>[6]

While futility does not support dismissal of the proposed counterclaims, the Court must still consider whether the permissive joinder Defendant seeks is appropriately granted here.  Specifically,

---

[6] In its Supplement ordered by the Court, Defendant states the additional counter-defendants should be analyzed under the permissive joinder standard found in Fed. R. Civ. P. 20.  ECF No. 59 at 9.  Plaintiff agrees.  ECF No. 58 at 4.

Fed. R. Civ. P. 13(h) states: "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 20 states that "[p]ermissive joinder is just that—permissive—so it is in the Court's discretion whether or not to grant joinder under Rule 20." *Ignite Spirits, Inc. v. Consulting by AR, LLC*, Case No. 2:21-cv-01590-JCM-EJY, 2021 WL 7907240, at *4 (D. Nev. Dec. 13, 2021) (quoting *Casados v. Drury*, Case No. 13-00283 LEK-RLP; 2014 WL 2968179, at *2 (D. Haw. June 30, 2014). Under Rule 20(a)(2) the Court may grant the joinder of a new defendant when "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." "There is no bright-line definition of transaction, occurrence or series, and courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder." *Ignite Spirits*, 2021 WL 7907240, at *4 *citing Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Nonetheless, even "where the requirements of permissive joinder are met, the Court must examine whether joinder comports with the principles of 'fundamental fairness' or would result in prejudice to either side." *Id*. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (internal citation omitted).

Plaintiff first argues the Court should deny Defendant's Motion to add Leonardo, Wiedemer, and Reyes as additional counter-defendants because Defendant failed "to establish good cause for the late amendment to its pleadings under Rule 16(b)." ECF No. 58 at 4. However, the Court found good cause for the late amendment was satisfied and, thus, this argument fails.

Plaintiff also argues Defendant's third, fourth, sixth, seventh, and eight counterclaims are improper because they are not asserted against an existing party as required under Rule 13(h). *Id*. at 4-5. As recently explained in *Universal Entertainment Corporation v. Aruze Gaming America, Inc.*, there is "no binding jurisdiction guiding" the outcome Plaintiff seeks. Case No. 2:18-cv-00585-RFB-NKJ, 2020 WL 2840153, at *15 (D. Nev. May 30, 2020) (internal citation omitted). Nonetheless, decisions issued by the District of Nevada and District of Arizona support an interpretation of Rule 20 that is broader than Plaintiff suggests.

In *In re Experian Information Solutions, Incorporated*, Case No. CV-15-01212-PHX-GMS (Lead Case), 2017 WL 3574847, at *1-2 (D. Ariz. Aug. 17, 2017), Experian sought to join additional parties to counterclaims in complex litigation involving the Fair Credit Reporting Act. *Id*. There, the court said: "it is clear that 'at least one party against whom a counterclaim/third-party claim is asserted must be a party to the original action.'" *Id*. at 2 *citing Various Markets, Inc. v. Chase Manhattan Bank, N.A.*, 908 F.Supp. 459, 471 (E.D. Mich. 1995). The court further stated: "The *Various Markets* court held that so long as a counterclaim against a new party was asserted in the same pleading as a counterclaim against an existing party, the new party could be joined." *Id*. at 2 n.4 *citing Various Markets*, 908 F.Supp. at 471. The *Experian* decision contrasted this holding to holdings that require "*all* counterclaims … [to] name an existing party as well as any new parties." *Id. citing AllTech Commc'ns, LLC v. Brothers*, 601 F.Supp.2d 1255, 1261, n.3 (N.D. Okla. 2008) (emphasis in original). Ultimately, the court held that "under the broadest reading of Rule 13(h), a counterclaim against a new party must be … accompanied by a counterclaim against an existing party." *Id*. at *5 (citation omitted). However, when all counterclaims against an existing party are dismissed, the counterclaims against the new party must also be dismissed. *Id. See also Warfield v. Advnt Biotechnologies, LLC*, Case No. CIV-06-0904-PHX-DGC, 2006 WL 3257718, at *4 (D. Ariz. Nov. 9, 2006) (dismissing counterclaims against a new party when the existing party was named in the counterclaims solely to comply with Rule 13(h)). Rule 13(h) is intended, in part, to promote the disposition of an entire matter arising from a single nucleus of facts. *Experian*, 2017 WL 3574847, at *5 *citing Various Markets*, 908 F.Supp. at 471.

In *WGH Acquisitions, LLC*, the District of Nevada rejected the "argument that a party can be added as a counter-defendant only to claims that are also asserted against the original counter-defendant." *WGH Acquisitions, LLC, v. BondRock Partners, LLC*, Case No. 2:12-cv-01293-PMP-PAL, 2014 WL 12788999, at *3 (D. Nev. Sept. 2, 2014). As explained: "Such a limitation is neither compelled by the language of the relevant Rules nor consistent with their spirit and purpose." *Id*. The court declined "to follow those courts … [decisions holding] that each individual counterclaim against a non-party must also be asserted against an existing party, rather than merely asserted in the same pleading as those asserted against existing parties." *Id*. (internal citations and quote marks

omitted). As stated in *WGH Acquisitions*, "[l]iberal joinder of all parties and claims in a single lawsuit … promotes Rule 1's directive that the Rules 'should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id*. citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

Here, Defendant asserts eight counterclaims (sometimes mistitled as third-party claims). Counterclaims one and two are asserted against existing party RES Exhibit Services and the additional counterclaim defendant James Leonardo, RES's CEO. Counterclaims three through eight name only new parties to this action (including Leonardo, Wiedemer, and/or Reyes). Count one asserts fraudulent misrepresentation and inducement. ECF No. 32-1 at 23-24. Defendant's second count alleges negligent misrepresentation. *Id*. at 24. The facts alleged in the counterclaim are sufficient to overcome any assertion that these claims are asserted solely to facially comply with Rule 13(h). Because counterclaims asserted against the existing plaintiff (RES) survive Plaintiff's challenge to the Motion to Amend, the relief sought complies with Rule 20(a)(2)(A). Further, there are clear common questions of law and fact as discussed in Rule 20(a)(2)(B). The Court exercises its discretion and finds Defendant's counterclaims may proceed.

**IV.     Order**

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Leave to File Counterclaim and Third-Party Complaint, Add New Parties, and Modify the Discovery Deadlines (ECF Nos. 32, 34) is GRANTED in part and DENIED in part consistent with the body of this Order.

IT IS FURTHER ORDERED that Defendant must refile its proposed counterclaims removing references to third party claims and properly captioning the case.

IT IS FURTHER ORDERED that filing of the proposed counterclaims will effect service on Plaintiff. This counterclaim-defendant will have twenty-one (21) days to respond to the same.

IT IS FURTHER ORDERED that Defendant must serve the newly named counterclaim-defendants, which method may be agreed upon by the parties, who will have twenty-one (21) days following the date of service to file a responsive pleading.

IT IS FURTHER ORDERED that Defendant's discovery is reopened, in part, as follows:

- The period of reopened discovery will be measured from the date on which the last newly named counterclaim defendant is served. No discovery on such counterclaims, whether propounded on the existing or newly named party, can commence until all counterclaim defendants are served.

- The period of discovery will last 90 days commencing on the first business day following service of the last counterclaim-defendants.

- Defendant may propound one set of document requests—not to exceed 10 requests each—on each new counterclaim defendant.

- Defendant may re-depose each counterclaim defendant whose depositions were previously taken, but the deposition must be limited to issues arising from and reasonably pertaining to information disclosed in the documents received from Plaintiff on May 5, 2023. These potential second depositions are limited to four (4) hours each.

- Defendant may also depose any counterclaim defendant whose deposition was not previously taken. Such deposition must last no more than seven (7) hours.

- No other discovery may be conducted unless ordered by the Court or the parties agree and file a stipulation confirming otherwise.

- The dispositive motions deadline is thirty (30) days after the close of discovery.

- The proposed joint pretrial order is due 60 days after the close of discovery unless one or more dispositive motions are pending on that date. The fact of one or more pending dispositive motions will automatically vacate the due date for the joint pretrial order and advance such date to 60 days after all dispositive motions are resolved.

DATED this 25th day of September, 2023.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE