UNITED STATES DISTRICT COURT

ISTRICT OF NEVADA

* * *

RES EXHIBIT SERVICES, LLC,

    Plaintiff,

    v.

LNW GAMING, INC. f/k/a SG GAMING, INC. f/k/a BALLY GAMING, INC.,

    Defendant.

Case No. 2:21-cv-01953-APG-EJY

**ORDER**

Presently before the Court is Defendant's Motion for Sanctions.  ECF No. 42.  The Court considered the Motion, Opposition, and Reply.  ECF Nos. 49-1, 53.  The background relevant to the Motion for Sanctions is almost identical to the background detailed in the Motion to Amend, which the Court decided on September 25, 2023 (ECF No. 60).  That background is not repeated here.

**I.     Discussion**

    A.     <u>Case Terminating Sanctions are Not Warranted</u>.

Defendant moves for case terminating sanctions based on Plaintiff's alleged discovery misconduct—Plaintiff's failure to produce relevant documents, in its possession, responsive to Defendant's January 2022 document requests until May 2023.  ECF No. 42 at 4-5.  Plaintiff counters Defendant's argument stating it timely produced documents after "becoming aware" that its April 2022 production was incomplete.  ECF No. 49-1 at 2.

Case terminating sanctions may be warranted where "discovery violations threaten to interfere with the rightful decision of the case." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).  The Ninth Circuit permits imposition of such sanctions after the district court weighs: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).  Here, despite the parties' rehashing of the arguments underlying this dispute, the issue before the Court is not

1

1    whose rendition of events will ultimately prevail or whether the Complaint the Court allowed

2    Defendant to amend to add counterclaims will, if challenged, survive a motion to dismiss.  Rather,

3    the issue is whether Plaintiff's conduct warrants the severe sanctions Defendant seeks.

4        To this end Plaintiff provides a timeline of its efforts to respond to Defendant's January 2022

5    document requests.  ECF No. 49-1 at 9.  Plaintiff admits that in July 2022, following the deposition

6    of Plaintiff's CEO, Defendant raised with Plaintiff that Plaintiff's initial document production did

7    not include internal correspondence, a concern Plaintiff agreed to investigate.  *Id*. at 11.  Plaintiff

8    says that after being notified by Defendant of its failure, Plaintiff confirmed Defendant was right—

9    Plaintiff failed to produce any internal communications relevant to this dispute, which Plaintiff says

10   was the result of a "technical error."  *Id*.  *See also* Declaration of Kyle D. Taylor ("Taylor Dec."),

11   ECF No. 48-18 ¶ 12, in which Mr. Taylor says: "[d]ue to the large volume of documents within …

12   [Plaintiff's] First Production, I did not notice that the First Production did not include … [Plaintiff's]

13   internal communications"; and, Declaration of Chuck Hathaway ("Hathaway Dec."), ECF No. 48-

14   15 ¶ 16, in which Mr. Hathaway states that following Defendant expressing concern that no internal

15   communications were produced, he "realized that … [his] original search parameters inadvertently

16   failed to obtain [Plaintiff's] internal … emails through a technical error."  The Declarations do not

17   clarify if the "technical error" was Mr. Hathaway's search parameters or something else;

18   nonetheless, there is no dispute that Plaintiff's "first production" contained approximately 4,200

19   documents, with no internal communications, while Plaintiff's second production contained

20   approximately 57,000 documents, in an "unprocessed data in native format," and was comprised of

21   a host of documents including internal communications.  Taylor Dec. ¶ 15; ECF No. 60 at 4-5.

22       Plaintiff admits that following its native format production there were "several months" of

23   meet and confers between counsel and, "on November 9, 2022," Plaintiff's counsel "reproduced

24   certain documents to" defense counsel.  ECF No. 49-1 at 12.  Plaintiff says when it received a letter

25   in January 2023 from defense counsel saying Defendant was "not in possession of any internal

26   correspondence" Plaintiff was confused because Plaintiff's counsel "provided this information in an

27   email … on October 5, 2022."  *Id*. at 13.  Regardless of the different dates identified by Plaintiff,

28

1    Plaintiff admits there were "several" more months of meet and confer efforts and that the document

2    production, in a searchable and readable format, occurred on May 5, 2023. *Id*. at 13-14.

3         Plaintiff submits that its supplemental production of internal communication in May 2023,

4    was timely. *Id*. at 17. Plaintiff says it only had a duty to supplement once Defendant made Plaintiff

5    aware of its incomplete or inaccurate production. *Id*. *citing Simley v. Hologic, Inc.*, Case No. 16-cv-

6    0158, 2017 WL 4244861 [no pin cite provided], (S.D. Cal. Sept. 25, 2017). Plaintiff says from the

7    moment it learned of its incomplete production in July 2022 it "worked diligently with" Defendant

8    to produce "the relevant documents sought." Plaintiff says its failure to disclose any internal

9    communications, which Plaintiff admits were relevant, was substantially justified or harmless

10   because "it is inconceivable that" Defendant "was prejudiced or surprised by" Plaintiff's "delayed

11   production." *Id*. at 18. Plaintiff argues harmlessness based on its position that while readable and

12   searchable documents were not produced until May 2023, Defendant had the documents in native

13   format in September 2022. *Id*. at 19.

14        Plaintiff says to impose case terminating sanctions requires a finding of bad faith, a

15   proposition with which the Court agrees. *Id*. at 19-20; *see also In re Exxon Valdez*, 102 F.3d 429,

16   432 (9th Cir. 1996) (internal citation omitted); *see also Anheuser-Busch, Inc. v. Natural Beverage*

17   *Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (terminating sanctions are warranted where "a party has

18   engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.").

19   "The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized

20   must relate to matters in controversy in such a way as to interfere with the rightful decision of the

21   case. This rule is rooted in general due process concerns. There must be a nexus between the party's

22   actionable conduct and the merits of his case." *Tripati v. Corizon Inc.*, 713 Fed.Appx. 710, 711 (9th

23   Cir. 2018) (quoting *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988)). Indeed, district

24   courts only have discretion to impose the extreme sanction of dismissal if there has been "flagrant,

25   bad faith disregard of discovery duties." *Wanderer v. Johnston*, 910 F.2d 652, 655-56 (9th Cir.

26   1990). However, the Court must keep in mind that "the key factors are prejudice and availability of

27   lesser sanctions." *Alutiiq International Solutions, LLC v. OIC Marianas Ins. Corp.*, 305 F.R.D. 618,

28

1   627 & n.88 (D. Nev. 2015) (quoting *Hester v. Vision Airlines*, 687 F.3d 1162, 1169 (9th Cir. 2012)

2   (quotation omitted)).

3        Applying the preference to decide matters on their merits here, the Court is mindful that it

4   recently granted Defendant's Motion to Amend to add counterclaims against Plaintiff and newly

5   identified counter-defendants.  This factor therefore militates against granting case terminating

6   sanctions.  The Court also considered and finds the interest in expeditious resolution of litigation is

7   outweighed by the overarching policy of deciding cases on their merits, which is best served by

8   allowing this case to proceed.  The Court considered management of its docket, which is served by

9   allowing one, rather than potentially two cases, to raise all substantially related issues raised by

10  Defendant in its counterclaims.  The Court successfully addressed the risk of prejudice to Defendant

11  arising from Plaintiff's belated discovery when it granted Defendant's motions seeking to assert

12  counterclaims—a request made less than a month before Defendant's Motion for Sanctions was

13  filed—and permitted Defendant to conduct discovery.  ECF No. 60.  In fact, the Court granted

14  Defendant the opportunity to explore the documents produced in May 2023 with appropriate

15  witnesses through depositions and document requests.  *Id.* at 16.  After weighing all of the factors

16  the Ninth Circuit identifies as appropriate to consider before awarding case terminating sanctions,

17  the Court finds these factors do not support such an award.

18       Moreover, and as explained above, before case terminating sanctions may be entered, the

19  Court must make a specific finding of bad faith.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir.

20  2006) (before awarding sanctions pursuant to its inherent power, "the court must make an express

21  finding that the sanctioned party's behavior constituted or was tantamount to bad faith.") (internal

22  citation and quote marks omitted).  Actions constituting a fraud upon the court or actions that cause

23  "the very temple of justice [to be] defiled" are sufficient to support a bad faith finding.  *Chambers*

24  *v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001)

25  (Recklessness, when "combined with an additional factor such as frivolousness, harassment, or an

26  improper purpose," may support sanctions).  Here, while the Court finds Plaintiff's failure to produce

27  internal communications until confronted with its failure to do so was harmful and unjustified,

28  especially given the importance of such communications in a case alleging coordinated misconduct,

1    there is insufficient evidence to find this failure was intentional, reckless, or to effect a fraud on the

2    Court.   Plaintiff provided several declarations explaining that some "technical" error caused the

3    failure to produce internal communications.  The error was initially addressed by a production less

4    than two months later.  Debate continued regarding the format of the production, but not the

5    production itself.  However, the Court notes there is no contention that Plaintiff's May 2023

6    production was incomplete or inadequate in some fashion.  Thus, while the very delayed production

7    was not justified or harmless, the facts surrounding the delay also do not establish bad faith.

8    Importantly, the production, even if not a purge of the case history and original failure, provided

9    Defendant all that it needed to bring its counterclaims.

10          In sum, based on the entirety of the facts available, the Court declines to grant the case

11   terminating sanction Defendant seeks.

12          B.      The Availability of Lesser Sanctions.

13          While Defendant argues any sanction short of a case terminating sanction is inadequate (ECF

14   No. 42 at 20-21) the Court obviously does not agree.  Defendant is permitted to counterclaim against

15   Plaintiff and three new individual counterclaim-defendants including Plaintiff's CEO and Vice

16   President of Sale. ECF No. 60 at 15.  Discovery was reopened to allow Defendant to seek documents

17   and take depositions of all counterclaim-defendants.  *Id*. at 16.  The Order permitting Defendant to

18   proceed is contrary to Plaintiff's position and strenuous arguments.

19          While Defendant cannot conceive that Plaintiff's failure to produce documents in April 2022

20   was an "innocent mistake or oversight," as stated, the Court finds insufficient evidence to reach the

21   conclusion that Plaintiff acted in bad faith—intending to deceive Defendant or the Court regarding

22   the existence of those documents.  Plaintiff's counsel agreed to address the issue immediately upon

23   becoming aware of his client's failure and the initial supplemental production, albeit in native format,

24   was made less than two months later in September 2022.  With respect to the depositions taken

25   before the documents were produced, Defendant is permitted a second chance to depose Plaintiff's

26   witnesses.  *Id.*  In sum, the appropriate sanctions in this case include the reopening of discovery

27   allowing Defendant to proceed against Plaintiff and three individuals.  *Id.*  No discovery by Plaintiff

28   is permitted except as expressly ordered by the Court or agreed to by the parties.  *Id.*

1    Additional sanctions are awarded by the Court based on a violation of Federal Rule of Civil

2    Procedure 26(e).  This Rule states, in pertinent part, that "a party who has made a disclosure under

3    Rule 26(a)—or who has responded to an interrogatory, request for production, or request for

4    admission—must supplement or correct its disclosure or response ... in a timely manner if the party

5    learns that in some material respect the ... response is incomplete or incorrect...."  The plain text of

6    this Rule creates a continuing duty to supplement that does not require the submission of a separate

7    request to produce documents in order for the duty to be triggered.  6 James Wm. Moore, Moore's

8    Federal Practice § 26.131[3] at 26-583 to 26-584 (3rd ed. 2009) ("The duty to supplement and correct

9    disclosures and responses is a continuing duty....  The duty to supplement does not depend on

10   repeated requests by an adversary for updated information.  The fact that a party's attorney does not

11   know about the updated information is irrelevant; the duty exists nevertheless") (internal citation

12   omitted).  Moreover, authorities clearly demonstrate that a court may impose monetary sanctions

13   against a party for violations of Rule 26(e).  *Id.* § 26.132[1] at 26-585 ("Although Rule 26(e) does

14   not specifically mention sanctions, it is well established that courts may impose evidentiary and

15   monetary sanctions for violation of the provision.  This authority derives from the inherent power of

16   courts to oversee and manage discovery").

17   Federal Rule of Civil Procedure 37(c)(1) also supports the award of sanction based on a

18   violation of Rule 26(e).

19   
20   A party that without substantial justification fails to disclose information required by Rule 26(a)or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.  In addition to requiring payment of reasonable expenses including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.
21   
22   
23   
24   

25   Federal courts apply this rule strictly absent harmless error or substantial justification. *Yeti by Molly,*

26   *Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  "[T]he burden is on the party

27   facing sanctions to prove harmlessness" and substantial justification. *Id.* at 1106-07.  The Court acts

28   under this authority to award reasonable attorney fees to Defendant in the amount equal to the fees

incurred commencing in September 2022 when Plaintiff first—but belatedly—disclosed the internal communications it should have disclosed in April 2022 in response to Defendant's Request for Production of Documents, and May 5, 2023 when the disclosure was finally made in a format to which the parties initially agreed in their stipulated order pertaining to ESI.

Substantial justification for Plaintiff's failure to produce any internal communications in response to the January 2022 document requests until notified by Defendant of this failure is not demonstrated by a vaguely defined "technical error."  Mr. Hathaway, Plaintiff's "Director of Information Technology, … responsible for … data management … and … [Plaintiff's] IT infrastructure," admits he was asked to collect ESI responsive to Defendant's First Requests for Production of Documents.  Hathaway Dec. (ECF No. 48-15) ¶¶ 1, 3, 4, 6.  Mr. Hathaway does not explain how he went about this collection, what search parameters he used, or what error he made resulting in the failure to gather a single internal communication despite admitting he included "emails, MS Outlook, … and TEAMs files" in his search.  *Id*. ¶ 11.  Mr. Hathaway says only that once notified that he "did not produce internal … communications," he "realized … [his] original search parameters inadvertently failed to obtain internal … emails through a technical error."  *Id*. ¶¶ 15, 16.

This explanation falls short of "substantial justification."  The lack of detail requires a leap to connect Mr. Hathaway's title, experience, and job responsibilities to a "technical error" resulting in no internal communications being produced.  The Court cannot make this leap.  There is a failure to explain how the Director of IT who included emails, Outlook, and TEAMs in his search, failed to produce a single email as the result of that search.  No one explains the "technical error" that resulted in the production of no internal communication documents despite a search of the ESI repositories in which such documentation would ordinarily be found.  These vague representations are simply insufficient to substantially justify the error made.

This error also was not harmless.  Defendant deposed Plaintiff's CEO and several others before the internal communications were produced.  While the Court entered an Order allowing Defendant to retake any depositions previously concluded (ECF No. 60 at 16), there is obvious inefficiencies (not the least of which are fees and costs) in doing so.  There is also the potential

1   benefit to the party that failed to produce all documents reasonably responsive to a document request

2   who potentially gets to clarify and restate its position through a second deposition.

3   **II.      Order**

4            Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Sanctions (ECF No.

5   42) is GRANTED to the extent consistent with the contents of this Order.

6            IT IS FURTHER ORDERED that Plaintiff must pay the reasonable fees associated with

7   Defendant's efforts to obtain the ESI compliant production of Plaintiff's internal correspondence

8   incurred commencing with the September 2022 production and ending with the May 5, 2023

9   production of documents.  Defendant must submit a memorandum of fees associated with the award

10  of the same.  Defendant's memorandum must detail the activities, hours spent in tenths of hours, and

11  the rate charged by each attorney who worked on the topic.  Appropriate redactions for attorney

12  client privilege and/or work product may be made for the public filing with non-redacted copies of

13  such records filed under seal.  Defendant must submit its memorandum within 14 days of the date

14  of this Order.   Plaintiff has 7 days to file a response if any is desired.  No reply is permitted.

15           DATED this 27th day of September, 2023.

16

17           _____

18           ELAYNA J. YOUCHAH
             UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28